1   MacCONAGHY & BARNIER, PLC
    JOHN H. MacCONAGHY, State Bar No. 83684
2   645 First St. West
    Sonoma, California 95476
3   Telephone:  (707) 935-3205
    Facsimile:  (707) 935-7051
4   Email:      macclaw@macbarlaw.com

5   Attorneys for Appellee
    ANDREA A. WIRUM, Trustee In Bankruptcy
6

7

8                       UNITED STATES DISTRICT COURT

9                     NORTHERN DISTRICT OF CALIFORNIA

10

11  In re                            )
                                     )   Case No. C 07-03244 CRB
12  STEWART JAY WARREN                )
                                     )   [USBC, ND.Cal. No. 06-10967]
13                                    )
              Debtor.                 )
14  _____ )
                                     )
15  STEWART JAY WARREN,              )   **BRIEF OF APPELLEE**
                                     )   **ANDREA A. WIRUM,**
16            Appellant,              )   **TRUSTEE IN BANKRUPTCY**
                                     )
17       v.                          )
                                     )
18  SARA L.  KISTLER, Acting United States )
    Trustee; ANDREA A. WIRUM, Trustee )
19  in Bankruptcy;                   )
                         Appellees.   )
20  _____)

21

22

23                        On appeal from a final
         "Order Denying Debtor's Motion to Dismiss Under 11 U.S.C. §109(h)
24       and *Ex Parte* Request for Dismissal under 11 U.S.C. § 521(i)"
                  Entered by the United States Bankruptcy Court
25                for the Northern District of California
         Honorable Alan Jaroslovsky, United States Bankruptcy Judge
26

1

# <u>TABLE OF CONTENTS</u>

2

3

P**AGE(S)**

4 TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

5 TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

6 BASIS OF APPELLATE JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

7 STATEMENT OF ISSUE PRESENTED ON APPEAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

8 APPLICABLE STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

9 STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

10 ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

11      1.      OVERVIEW OF THE "BANKRUPTCY ABUSE PREVENTION
                AND CONSUMER PROTECTION ACT OF 2005" ("BAPCPA")
12              AS IT PERTAINS TO THE INSTANT CASE  . . . . . . . . . . . . . . . . . . . . . . . . 3

13      2.      THE BANKRUPTCY COURT CORRECTLY DENIED THE
                DEBTOR'S MOTION TO DISMISS HIS BANKRUPTCY CASE
14              UNDER SECTION 109 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

15              A.      Lack Of Eligibility Under Section 109 Does
                        Deprive The Bankruptcy Court Of Subject Matter
16                      Jurisdiction Over A Debtor's Bankruptcy Case  . . . . . . . . . . . . . . . . . . . 5

17              B.      There Is No Reported Authority Permitting A
                        Debtor To Dismiss His Own Case Due To His Own
18                      Failure To Comply With Mandatory Debtor
                        Requirements  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
19
                C.      Dismissal Of This Case Would Frustrate The
20                      Statutory Protections Provided By  BAPCPA  To
                        Priority Claims For Unpaid Domestic Support  . . . . . . . . . . . . . . . . . . . 10
21
        3.      THE BANKRUPTCY COURT CORRECTLY DENIED THE
22              DEBTOR'S MOTION TO DISMISS HIS BANKRUPTCY CASE
                UNDER SECTION 521 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
23

24

        CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
25

26

1

# TABLE OF AUTHORITIES

2

3     **CASES**                                                                    **PAGE(S)**

4

5     *Alexander v. Hillman*
          296 US 222, 241 - 242, 56 S.Ct. 204, 210-211, 80 L.Ed 792 (1935) . . . . . . . . . . . . . . . 7

6     *In re Barbaran*
          363 BR 333 (Bankr. D.D.C. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

7

8      *In re BCE W., L.P.*
          319 F.3d 1166, 1170 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

9     *In re Mills*
          341 BR 106 (Bankr. D.D.C. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

10

11    *In re Mendez*
          367 BR 109 (9th Cir. BAP 2007*)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

12    *In re Parker*
          351 BR 790 (Bankr. N.D. Ga. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

13

14    *In re Sherman*
          441 F.3d 794, 813 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

15    *In re Wenberg*
          94 BR 631 (9th Cir. BAP 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

16

17    *In re Wenberg*
          902 F.2d 768 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

18    *In re Withers*
          2007 WL 628078 (Bankr. N.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 12

19

20    *Werner v. Werner*
          267 F.3d 288 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

21

22    **STATUTES AND RULES**                                                       **PAGE(S)**

23    United States Code
          Title 11
              Section 101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

24            Section 109 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*
              Section 349 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

25            Section 362 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 9
              Section 507 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

26            Section 521 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

1

        Section 524 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        Section 704 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8

2        Section 707 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        Section 726 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

3        Section 1129 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        Section 1322 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

4        Section 1325 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

5    Title 28

        Section 158 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

6        Section 586 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

7

8 Federal Rules of Bankruptcy Procedure

        Rule 1007 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

9        Rule 8010 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

10

### TEXTS

11

*Debt Collection Practice In California,  2d ed.* ( California CEB 2000) . . . . . . . . . . . . . . . . . . 10

12

### PERIODICALS

13

Alexander *"'Herstory' Repeats: The Bankruptcy Code Harms Women and Children"*

14        13 Am. Bankr. Inst. L. Rev. 571 (Winter 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

15 Braucher *"The Challenge To The Bench And Bar Presented By The 2005 Bankruptcy Act: Resistence Need Not Be Futile"*

16        2007 U.Ill L.Rev. 93 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

17 Jenner *"A Legislative History Of The Bankruptcy Abuse Prevention And Consumer Protection Act of 2005"*

18        79 Am. Bankr. L. J. 485 (Spring 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

19 Sommer *"Trying To Make Sense Out Of Nonsense: Representing Consumers Under The "Bankruptcy Abuse Prevention And Consumer Protection Act of 2005"*

20        79 Am. Bankr. L. J. 191 (Spring 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

21

22

23

24

25

26

1    <u>BASIS OF APPELLATE JURISDICTION</u>

2        Pursuant to Federal Rule of Bankruptcy Procedure 8010(a)(2), the Appellee Andrea A.

3    Wirum agrees that this Court has appellate jurisdiction over this case pursuant to 28 U.S.C. §

4    158(a) and (c)(1)(A),  as asserted by the Appellant.

5    <u>STATEMENT OF ISSUE PRESENTED ON APPEAL</u>

6        1.    Did the Bankruptcy Court have jurisdiction to deny the Debtor's motion to

7    dismiss his bankruptcy case under Bankruptcy Code § 109, even though the Debtor had failed to

8    complete pre-bankruptcy "credit counseling" at the time of his filing ?

9        2.    Did the Bankruptcy Court abuse its discretion in denying the Debtor's motion to

10    dismiss his bankruptcy case under Bankruptcy Code § 521 after finding that the best interests of

11    creditors were served by permitting the Bankruptcy Trustee to continue to the  administer the

12    Estate ?

13    <u>APPLICABLE STANDARD OF REVIEW</u>

14        Questions of statutory construction are reviewed *de novo*, *In re BCE W., L.P.*  319 F.3d

15    1166, 1170 (9th Cir. 2003).  A bankruptcy court's decision on whether or not to dismiss a chapter

16    7 case is reviewed for abuse of discretion, *In re Sherman* 441 F.3d 794, 813 (9th Cir. 2006).

17    <u>STATEMENT OF THE CASE</u>

18        Stewart Jay Warren is a convicted felon[1] who failed to pay years and years of back child

19    support to his ex-wife.  In mid- 2006 he came into a significant amount of cash from a source

20    still under investigation.  His beleaguered ex-wife,  or others acting on her behalf,  discovered that

21    he was holding these monies.  On September 25, 2006, an "Order to Withhold – Child Support

22    Collections" in the amount of $93,330.46 was levied against his bank account at the Exchange

23    Bank in Santa Rosa, California by the State of California, Health and Human Services Agency,

24

---

25        [1]  See accompanying Request to Take Judicial Notice.  Though not part of the record
      below, this is an adjudicative fact which may properly be considered in the record on appeal,
26    *Werner v. Werner* 267 F.3d 288 (3d Cir. 2001).

1    Department of Child Support Services (ER 51 - 53).  Erroneously thinking he could continue to

2    evade his obligation to pay child support, frustrate these collection efforts through the

3    bankruptcy stay,  and keep the funds, on October 11, 2006, Mr. Warren filed a *pro se* Voluntary

4    Petition for Relief under Chapter 7 of the Bankruptcy Code in the U.S. Bankruptcy Court for the

5    Northern District of California (ER 1).   The Appellee Andrea A. Wirum was duly appointed as

6    the Chapter 7 Trustee in Bankruptcy of his estate from the "panel" of case trustees established

7    and maintained by the Office of the United States Trustee, a component of the U.S. Department

8    of Justice, see 28 U.S.C. § 586.

9         Mr. Warren filed what is known as a "skeletal" bankruptcy petition, containing only the

10   official form "voluntary petition for relief" and a creditor mailing matrix.   Mr. Warren did not

11   include with his bankruptcy petition a certificate that he had completed credit counseling from an

12   approved non profit credit counseling agency, or any documents establishing an exemption from

13   this requirement.   As permitted by Bankruptcy Rule 1007(c), he did not file with the petition

14   itself  the familiar "Schedules of Assets and Liabilities" and "Statement of Financial Affairs" on

15   Official Form Nos. 6 and 7, which set forth detailed lists and values of ones assets and liabilities,

16   income information, and the nature and extent of pre-bankruptcy financial transactions.  These

17   forms and other documents were due 15 days after the petition, *id.*  To remind the debtor of these

18   filing obligations, on October 12, 2006, the Bankruptcy Court issued its "Order for Individuals to

19   File Required Documents and Notice Regarding Automatic Dismissal", noting that "the court

20   MAY DISMISS this case" if there was noncompliance with the 15 day rule (ER 4).   When the

21   required documents were not timely filed, on October 30, 2006, the Court entered its "Order for

22   Hearing Re Sanctions", setting a hearing date of November 16, 2006.  The Order provided, "The

23   purpose of this hearing is to determine if the court should fine or otherwise sanction you and/or

24   your counsel, **or** dismiss this case, pursuant to §105(a) for failure to file timely schedules and

25   statement of affairs (ER 6).

26        Prior to the November 16 hearing, the Appellee Wirum filed a response which requested

1   that the bankruptcy court not dismiss the case.  Wirum advised the Court that she had been

2   contacted by a representative of Exchange Bank advising her that (1) Warren's bank account had

3   been levied before the bankruptcy and that the Bank was prepared to turnover over the

4   $93,330.46 to the Estate and (2) after the bankruptcy filing, Warren withdrew the remaining sum

5   of approximately $90,000 from the Bank (which remains unaccounted for) (ER 49 - 53).  With

6   this opposition on file, the bankruptcy court dropped the proposed dismissal from calendar.

7   (Wirum Supp. ER 6, 11/1706 docket entry) In the following months, both the Appellee Wirum

8   and the Office of the U.S. Trustee unsuccessfully sought to obtain Warren's cooperation in the

9   administration of the case. (Wirum Supp ER 6 - 7).

10          On March 6, 2007, Warren filed a Motion to Dismiss his bankruptcy case the ground that

11   he was ineligible to be a Chapter 7 debtor under Bankruptcy Code §109(h)  because he had "...

12   failed to obtain credit counsel prior to the commencement of the case and failed to obtain and

13   exemption within the time prescribed by law." (ER 19).  Both the Office of the United States

14   Trustee (Appellee Sara L. Kistler) and Ms. Wirum objected (ER 26, 44 ).  On April 4, 2007,

15   Warren  supplemented his Motion to Dismiss with an *ex parte* "Request for Entry of Order of

16   Dismissal" based on his failure to timely file the Schedules of Assets and Liabilities, Statement

17   of Financial Affairs, and other  papers required by Bankruptcy Code Section 521(ER 54). Both

18   motions were heard on April 6, 2007. Following the issuance of its "Memorandum on Motions to

19   Dismiss" (ER 56), on April 20, 2007, the Bankruptcy Court entered its "Order Denying Debtor's

20   Motion to Dismiss Under 11U.S.C. § 109(h) and *Ex Parte* Request for Dismissal Under 11

21   U.S.C. § 521(i)" (ER 59).   On April 23, 2007, Warren filed a timely  Notice of Appeal (ER 60).

22                                    ARGUMENT

23       1.      OVERVIEW OF THE "BANKRUPTCY ABUSE PREVENTION
                 AND CONSUMER PROTECTION ACT OF 2005" ("BAPCPA")
24               AS IT PERTAINS TO THE INSTANT CASE

25          This case involves the interpretation of certain provisions of The Bankruptcy Abuse

26   Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (2005)

1    ("BAPCPA"), the most comprehensive overhaul of the Bankruptcy Code in twenty five years.

2    The most dramatic change of BAPCPA to the old bankruptcy system was the enactment of the

3    "means testing" provisions of Section 707(b)[2] to restrict the availability of Chapter 7 relief to

4    individuals with income greater than the statewide median.  The new law also extends the time

5    between bankruptcy discharges and restricts serial filers.  The stated purpose of BAPCPA is to

6    make it harder to file bankruptcy, see Jenner *A Legislative History Of The Bankruptcy Abuse*

7    *Prevention And Consumer Protection Act of 2005"* 79 Am. Bankr. L. J. 485, 566 - 567 (Spring

8    2005).  However, BAPCPA maintains three fundamental "pro-debtor" provisions of the old law:

9    (1) it gives debtors the benefit of the "automatic stay" set forth in Section 362 immediately

10   enjoining most collection actions on the filing of the case; (2) it gives debtors, on certain

11   conditions, a "fresh start", discharge of indebtedness pursuant to Section 524; and (3) it allows

12   debtors to retain "exempt property", such as a homestead or IRA, as set forth in Section 522.  It

13   also maintains a fundamental "pro creditor" provision of the old law: it empowers a bankruptcy

14   trustee to investigate the financial affairs of the debtor, collect and sell "non-exempt" assets, and

15   distribute the proceeds to creditors in the order of statutory priority, see Sections 704 and 726. It

16   is this attribute of the bankruptcy process which motivates many debtors, including the Appellant

17   Warren, to attempt to get out of bankruptcy after they have gotten in, preferring to play "cat and

18   mouse" with their creditors outside the system rather than deal with the summary enforcement

19   powers of the bankruptcy court and the bankruptcy trustee to satisfy their creditors' claims.

20          This case involves the new provisions of BAPCPA directing that a consumer debtor (1)

21   receive credit counseling from an approved agency prior to filing a bankruptcy petition (Section

22   109(h) and (2) file certain other financial information with 45 days thereafter (Section

23   521(a)(1)(B)).  BAPCPA and the reported cases interpreting it are reasonably consistent to the

24   effect that, on motion by **a creditor,** the bankruptcy court has little or no discretion but to

25   _____

26          [2] Unless otherwise noted, all references are to Title 11, U.S.C.A.

1   dismiss the case if the debtor fails to meet these requirements.  BAPCPA is not so clear as to the

2   bankruptcy court's obligations when it is **the debtor** who seeks to dismiss. [3]

3          As will be shown below, the bankruptcy court's order  in the instant case denying

4   Warren's motion to dismiss correctly grafted the new dismissal provisions of BAPCPA onto

5   settled principles of equitable jurisdiction and waiver, and it should be affirmed.

6          2.     THE BANKRUPTCY COURT CORRECTLY DENIED THE
                  DEBTOR'S MOTION TO DISMISS HIS BANKRUPTCY CASE
7                 UNDER SECTION 109

8                 A.     Lack Of Eligibility Under Section 109 Does
                         Deprive The Bankruptcy Court Of Subject Matter
9                        Jurisdiction Over A Debtor's Bankruptcy Case

10          Bankruptcy Code § 109 is entitled "**Who may be a debtor**" and sets forth eligibility

11   requirements under the various chapters of the Bankruptcy Code.  BACPCA amended Section

12   109 to add subsection (h),  which provides in relevant part:

13                 (1) ....notwithstanding any other provision of this section, an
                   individual may not be a debtor under this title unless such
14                 individual has, during the 180-day period preceding the date of
                   filing of the petition by such individual, received from an approved
15                 nonprofit budget and credit counseling agency described in section
                   111(a) an individual or group briefing (including a briefing
16                 conducted by telephone or on the Internet) that outlined the
                   opportunities for available credit counseling and assisted such
17                 individual in performing a related budget analysis."

18          The Appellant Warren argues that Section 109 jurisdictional, but this argument is

19

20          [3] The technical deficiencies of BAPCPA have been extensively discussed in the
     commentaries; e.g., "The problems with the 2005 Act are breathtaking.  There are typos, sloppy
21   choices of words, hanging paragraphs, and inconsistencies.  Worse, there are largely pointless
     but burdensome new requirements, overlapping layers of screening, mounds of new paperwork,
22   and structural incoherence" , Braucher *"The Challenge To The Bench And Bar Presented By The
     2005 Bankruptcy Act: Resistence Need Not Be Futile"* 2007 U.Ill L.Rev. 93, 97.  "One of the
23   chief problems that will be confronted is atrocious drafting, especially in many of the consumer
     provisions of the bill.  In contrast to the 1978 legislation which was crafted with extensive
24   assistance from many of the finest minds in the bankruptcy world, many of the consumer
     provisions of the 2005 legislation were largely drafted by lobbyists with limited knowledge of
25   real-life consumer bankruptcy practice." Sommer *"Trying To Make Sense Out Of Nonsense:
     Representing Consumers Under The "Bankruptcy Abuse Prevention And Consumer Protection
26   Act of 2005"* 79 Am. Bankr. L. J. 191, 191- 192 (Spring 2005)

1   contrary to settled Ninth Circuit authority.  The issue was addressed in *In re Wenberg* 94 BR 631

2   (9th Cir. BAP 1988), where a debtor attempted to file a Chapter 13 bankruptcy case, even though

3   the amount of his debts exceeded the eligibility limits for Chapter 13 set forth in Section 109(e).

4   A creditor moved for dismissal of the case, which the Bankruptcy Court granted.  The Ninth

5   Circuit Bankruptcy Appellate Panel reversed, stating at 94 BR 637:

6           Further support for holding that Section 109(e) eligibility is not
            jurisdictional in nature may be derived by implication from the
7           language of Section 109 which states nothing of the bankruptcy
            court's subject matter jurisdiction, but concerns only the
8           "eligibility of debtors for relief" [citation].  In this regard, it is
            important to note that the Bankruptcy Code defines a "debtor" as a
9           "person or municipality concerning which a case *under this title*
            has been commenced." 11 U.S.C. Section 101(12) .
10          Accordingly, this Panel concludes that Section 109 eligibility is
            not jurisdictional...

11          On further appeal, the Ninth Circuit affirmed in a briefed published opinion, *In re*

12  *Wenberg*  902 F.2d 768 (9th Cir. 1990), "We AFFIRM for the reasons stated in the opinion of the

13  Bankruptcy Appellate Panel."

14          Consistent with *Wenberg*, the Ninth Circuit Bankruptcy Appellate Panel addressed the

15  exact issue presented by this case in *In re Mendez* 367 BR 109 (9th Cir. BAP 2007), directly

16  controlling authority not cited by Mr. Warren in the Appellant's Opening Brief.  Like Warren,

17  the debtor in *Mendez* filed a Chapter 7 bankruptcy case without complying with the requirements

18  of Section 109(h) to concurrently file a proper certificate of credit counseling.  When Mendez's

19  bankruptcy trustee discovered assets available to pay creditors and sought to administer them,

20  Mendez wanted out and filed a Motion to Dismiss her case.  Her bankruptcy trustee opposed the

21  motion.  It was denied by the bankruptcy court.  The Ninth Circuit Bankruptcy Appellate Panel

22  affirmed, framing the question as follows:

23          The record in this case reflects that the Debtor is a person with
            debt problems who took advice to seek a solution to her financial
24          difficulties through chapter 7 bankruptcy.  Once in bankruptcy,
            when she found that a consequence of her filing might be the sale
25          of her home, she wanted out.
            The new wrinkle to this commonly encountered scenario is the

26

- 6 -

1
2

> Debtor's attempt to sue the BAPCPA credit counseling
> requirement offensively, as a ticket to get out of bankruptcy. 367
> BR at p. 114.

3

Relying on the case of *In re Parker* 351 BR 790 (Bankr. N.D. Ga. 2006), the BAP held

4

that the credit counseling requirement was not jurisdictional, and that it could be waived by the

5

debtor:

6
7
8
9
10
11

> Consistent with the *Parker* analysis, the bankruptcy court in this
> case determined that compliance with the requirements of Section
> 109(h) was a matter of eligibility rather than jurisdiction, and
> consequently, was waivable.  We agree with the *Parker* court's
> analysis, and the determination of the bankruptcy court in this
> case, that strict compliance with the credit counseling requirements
> of Section 109(h) can be waived by a debtor. Accordingly, we find
> that the bankruptcy court did not err as a matter of law in denying
> the Motion to dismiss on Section 109(h) grounds.  367 BR at p.
> 118.

12

See also *In re Withers* 2007 WL 628078 (Bankr. N.D. Cal. 2007).  This is consistent with

13

longstanding principles of equitable jurisdiction expressed in  *Alexander v. Hillman* 296 US 222,

14

241 - 242, 56 S.Ct. 204, 210-211, 80 L.Ed 792 (1935):

15
16
17

> By presenting their claims respondents subjected themselves to all
> the consequences that attach to an appearance...That requirement is
> in harmony with the rule generally followed by courts of equity
> that having jurisdiction over the parties to controversies brought
> before them, they will decide all matters in dispute and decree
> complete relief

18

There is no reason for this Court to depart from this common sense, fundamentally fair

19

result in the instant case.

20
21

> **B.**      **There Is No Reported Authority Permitting A
> Debtor To Dismiss His Own Case Due To His Own
> Failure To Comply With Mandatory Debtor
> Requirements**

22

Mr. Warren string cites a number of out-of-circuit bankruptcy court cases at Appellant's

23

Opening Brief, pp. 5 - 8 in support of his claim that it was err for the bankruptcy court to deny

24

his Motion to Dismiss.  He argues that there is a "split" as to whether the failure to file the credit

25

counseling certificate is "jurisdictional" or "procedural", but that all of the cases  except for

26

1   *Parker* and *Withers, supra*, hold that dismissal is mandatory.

2       In fact, not a single one of the cases cited by Warren holds that the failure to comply with

3   Section 109(h) is jurisdictional.  Not a single one of the cases dealt with a situation where *the*

4   *debtor* was trying get his or her own bankruptcy case dismissed, a critical distinguishing factor

5   noted in *Mendez, supra,* at 367 BR p. 115.  One of the cases holding that dismissal was

6   "mandatory", *In re Mills* 341 BR 106 (Bankr. D.D.C. 2006),  was *reversed*, see *In re Barbaran*

7   363 BR 333 (Bankr. D.D.C. 2007).  Thus, none of Warren's authority provides any basis to

8   reverse the Bankruptcy Court here.

9           C.      Dismissal Of This Case Would Frustrate The
                    Statutory Protections Provided By  BAPCPA  To
10                  Priority Claims For Unpaid Child Support

11      As is noted above, one of the most important attributes of BAPCPA is the enhanced

12  rights given to the holders of priority claims for unpaid domestic support. This occurred through

13  a number of changes to the Bankruptcy Code.  First, the priority statute, Section 507, formerly

14  ranked domestic support claims seventh in the distribution hierarchy, behind administrative

15  expenses, employee wage and benefit claims, and consumer deposits.  Under BAPCPA, claims

16  for domestic support obligations have been moved to the *first* priority in distribution by new

17  Section 507(a)(1), before even general administrative compensation paid to the chapter 7 trustee.

18  Second, the provisions of Section 704, "**Duties of trustee**" have been modified to add the

19  following:

20              (a) The trustee shall –
                (10) if with respect to the debtor there is a claim for a domestic
21              support obligation, provide the applicable notice specified in
                subsection (c);
22              (c) (1) In a case described in subsection (a)(10) to which
                subsection (a)(10) applies, the trustee shall --
23              (A) (i) provide written notice to the holder of the claim described
                in subsection (a)(10) of such claim and of the right of such holder
24              to use the services of the State child support enforcement agency
                established under sections 464 and 456 of the Social Security Act
25              for the State in which such holder resides, for assistance in
                collecting child support during and after the case under this title;
26              (ii) include in the notice provided under clause (i) the address and

1    telephone number of such State child support enforcement agencyl
     and
2    (iii) include in the notice provided under clause (i) an explanation
     of the rights of such holder to payment of such claim under this
3    chapter;

4    Third, the provisions of the automatic stay have been modified to expand the rights of

5    spouses and children to commence, prosecute, and collect family law judgments and orders

6    without leave of the bankruptcy court, see Section 362(b)(2).  Fourth, no individual can confirm

7    a plan of reorganization under Chapter 11 or Chapter 13 unless he or she is current on domestic

8    support obligations, see Sections 1129(a)(14), 1322(a)(4), and 1325(a)(8).

9    All of these protections would be frustrated by a dismissal of this case.  One

10   commentator has aptly noted that the domestic support provisions are for the benefit of the

11   unpaid spouse, not the debtor, and has expressed concern over the negative implications of

12   dismissing a case involving child support obligations too quickly:

13            ....alimony, maintenance, support and property settlement debts
              have been given new status as "domestic support obligations;"
14            ....these obligations will now receive first-priority for repayment
              among unsecured creditors;...the automatic stay has been modified
15            to permit the continuation of many more domestic
              relations/domestic support actions.  Some of the concerns
16            expressed by the bankruptcy community about the dischargeability
              of marital debts have been addressed in the new law.  In addition,
17            the rules relating to the discharge of alimony, maintenance, support
              and property settlement obligations have been streamlined.
18            However, in order to take advantage of the new "domestic support
              obligations" provisions of the Bankruptcy Code one must be able
19            to file bankruptcy in the first place.  Alexander *"'Herstory'
              Repeats: The Bankruptcy Code Harms Women and Children"* 13
20            Am. Bankr. Inst. L. Rev. 571, 578 (Winter 2005)

21

22   The effect of dismissing the instant case would be to make it virtually impossible for the

23   domestic support claimants of Warren to collect the sums due.  Pursuant to Section 349(b) the

     effect of any dismissal is to undo all effects of the bankruptcy.  Warren's $93,330.46 would go
24
     back into his bank account instead of being paid for his child support obligation.  Critically, the
25
     funds would not be picked up by the prepetition bank levy – that has long since expired.  As
26

1  noted in 2 *Debt Collection Practice in California 2d ed.* (CEB 2000) Section 9.33, p. 600:

2          The timing on levying a judgment debtor's bank account is
3          important.  The amount reached by garnishing a bank account **is
what is in the bank at the instant of the levy;** any amounts the
4          judgment debtor deposits later in the day are not reached by the
levy (Emphasis added).

5  Obviously, the scheme of Mr. Warren's efforts to dismiss his case below and to prosecute

6  his appeal here is to get the seized funds back in his bank account and abscond with them before

7  a new domestic support order can be levied.  It is difficult to imagine a more offensive injustice

8  in a civil matter.

9      3.      THE BANKRUPTCY COURT CORRECTLY DENIED THE
DEBTOR'S MOTION TO DISMISS HIS BANKRUPTCY CASE
10            UNDER SECTION 521

11  Bankruptcy Code Section 521(i), another of the new provisions of BAPCPA, states in

12  relevant part:

13          (i)(l) Subject to paragraphs (2) and (4) and notwithstanding section
707(a), if an individual debtor in a voluntary case under chapter 7
14          or 13 fails to file all of the information required under subsection
(a)(1) within 45 days after the date of the filing of the petition, the
15          case shall be automatically dismissed effective on the 46th day after
the date of the filing of the petition.
16          (2) Subject to paragraph (4) and with respect to a case described in
paragraph (1), any party in interest may request the court to enter
17          an order dismissing the case.  If requested, the court shall enter an
order of dismissal not later than 5 days after such request.
18          (4) Notwithstanding any other provision of this subsection, on the
motion of the trustee filed before the expiration of the applicable
19          period of time specified in paragraph (1), (2), or (3), and after a
notice and a hearing, the court may decline to dismiss the case if
20          the court finds that the debtor attempted in good faith to file all the
information required by subsection (a)(1)(B)(iv) and that the best
21          interests of creditors would be served by administration of the
case.
22

23  The "information required under subsection [521]a)(1)" is the following:

          (A) a list of creditors; and
24          (B) **unless the court orders otherwise –**
(i) a schedule of assets and liabilities;
25          (ii) a schedule of current income and expenditures;
(iii) a statement of the debtor's financial affairs....
26          (iv) copies of all payment advices or other evidence of payment

received within 60 days before the date of the filing of the petition
by the debtor from any employer of the debtor;
(v) a statement of the amount of monthly net income, itemized to
show how the amount is calculated; and
(vi) a statement disclosing any reasonably anticipated increase in
income or expenditures over the 12-month period following the
date of the filing of the petition; (Emphasis added).

Appellant Warren incorrectly contends that, "there is no dispute that the Appellant did

not provide any of the information required by Section 521(a)(1)" (App.Op.Br., p. 7:21 -23) and

that "Should the Trustee's Request [not to dismiss the case] be construed to be a motion pursuant

to Section 521(i)(4), the Court would have had to find that the Appellant attempted to file the

information in good faith in order to grant relief from the automatic dismissal provision."

(App.Op.Br., p. 8:21 -27.

There are three problems with this argument.

First, the only information absolutely required by Section 521(a)(1) is "a list of creditors"

pursuant to Section 521(a)(1)(A).  Warren *did* provide this information, see ER 25.  All of the

*other* information required by Section 521(a)(1) is subject to the qualifier "unless the court

orders otherwise", see Section 521(a)(1)(B).  Here, the Court entered an order waiving this

requirement, see ER 58.  The only way to harmonize the statute is to interpret it so that dismissal

is mandatory and "automatic" only if the creditor matrix; i.e., the list of creditors, is not filed

with the petition.

Second, it is not correct to say that Section 521(i)(4) requires a "good faith" finding

regarding the provision of *all* information required by Section 521(a)(1) before the requirement

can be excused.  Section 521(i)(4), even if otherwise applicable, refers *only* to the information

required by Section 521(a)(1)(B)(iv); i.e., the debtor's pay stubs covering the 60 days prior to

bankruptcy, see the statutory language above.  There was nothing in the record below to suggest

that the debtor was employed within the 60 days prior to bankruptcy, had pay stubs, or that the

information described in Section 521(a)(1)(B)(iv) otherwise existed.  The limited "good faith"

requirement of a Trustee's motion under Section 521(a)(1)(B)(iv) is inapplicable to the instant

1    matter.

2          Finally, as Bankruptcy Judge Tchaikovsky held in *In re Withers, supra* :

3                An individual who files a chapter 13 petition has the right to
             dismiss the case at any time. However, traditionally, an individual
4            who files a chapter 7 petition must file a noticed motion to dismiss
             the case, and his motion may be denied. Construing 11 U.S.C.
5            Section 521(a)(1)(B) and (i) to give a chapter 7 debtor the absolute
             right to cause the automatic dismissal of the case 45 days after it is
6            filed would represent a dramatic change in the law and would open
             the door to abuse.

7
          The Appellant in the instant case is urging this Court to adopt a rule which would allow
8
   him to benefit from his own, direct violation of bankruptcy court orders. That does not present a
9
   good reason to reverse the judgment below.
10
                                        CONCLUSION
11
          Neither dictates of BAPCPA nor fundamental notions of procedural fair play will be
12
   served by reversal of the bankruptcy court. Dismissal of this case would allow the Appellant to
13
   continue to evade his responsibility to pay child support and gain an advantage through his own
14
   disobedience of lawful bankruptcy court orders. The judgment should be affirmed.
15
   Dated: September 4, 2007                    Respectfully submitted,
16
                                               MacConaghy & Barnier, PLC
17

18                                             /s/ JohnH. MacConaghy
                                               By John H. MacConaghy
19                                             Attorney for Appellee
                                               *Andrea A. Wirum, Trustee in Bankruptcy*
20

21

22

23

24

25

26

1

## **DECLARATION OF SERVICE BY MAIL**

2

3        I am a citizen of the United States, over the age of 18 years and not a party to the within
action.  My business address is 645 First Street West, Sonoma, California  95476.

4

5        I served true and correct copies of the BRIEF OF APPELLEE ANDREA A. WIRUM,
TRUSTEE IN BANKRUPTCY, by placing said copies through the United States Mail at
Sonoma, California on the date shown below, and in a sealed envelope(s) with first-class postage
6   prepaid, addressed to the person(s) below.

7        I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct.

8

9        Executed at Sonoma, California on September 6, 2007.

10                                                          */ S /*

                                        _____
11                                        Deena M. York

12

13   David N. Chandler, Sr. Esq.
     David N. Chandler, P.C.
     1747 Fourth St.
14   Santa Rosa, CA  95404

15   Office of the U.S. Trustee
     U.S. Department of Justice
16   250 Montgomery Street, Suite 1000
     San Francisco, CA  94104-3401
17   Attn: James Shepard, Esq.

18

19

20

21

22

23

24

25

26