MacCONAGHY & BARNIER, PLC
JOHN H. MacCONAGHY, State Bar No. 83684
645 First St. West
Sonoma, California 95476
Telephone: (707) 935-3205
Facsimile: (707) 935-7051
Email: macclaw@macbarlaw.com

Attorneys for Appellee
ANDREA A. WIRUM, Trustee In Bankruptcy

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>STEWART JAY WARREN<br><br>Debtor.<br><br>STEWART JAY WARREN,<br><br>Appellant,<br><br>v.<br><br>SARA L. KISTLER, Acting United States Trustee; ANDREA A. WIRUM, Trustee in Bankruptcy;<br>Appellees. | Case No. C 07-03244 CRB<br><br>[USBC, ND.Cal. No. 06-10967]<br><br>**REQUEST TO TAKE JUDICIAL NOTICE** |

On appeal from a final
"Order Denying Debtor's Motion to Dismiss Under 11 U.S.C. §109(h)
and *Ex Parte* Request for Dismissal under 11 U.S.C. § 521(i)"
Entered by the United States Bankruptcy Court
for the Northern District of California
Honorable Alan Jaroslovsky, United States Bankruptcy Judge

NOTICE IS HEREBY GIVEN pursuant to Rule of 201 of the Federal Rules of Evidence, the Appellee Andrea A. Wirum hereby requests the Court take judicial notice of the final order of the Court of Appeal of the State of California in the proceeding *People of the State of California v Stewart Jay Warren* Case No. A112533, filed on June 28, 2007, a copy of which is attached.

Dated: September 5, 2007

Respectfully submitted,

MacConaghy & Barnier, PLC

/s/ JohnH. MacConaghy
By John H. MacConaghy
Attorney for Appellee
*Andrea A Wirum, Trustee in Bankruptcy*

This is the html version of the file http://www.courtinfo.ca.gov/opinions/nonpub/A112533.DOC.
G o o g l e automatically generates html versions of documents as we crawl the web.
To link to or bookmark this page, use the following url: http://www.google.com/search?q=cache:Jkbs4EcIN0IJ:www.courtinfo.ca.gov/opinions/nonpub/A112533.DOC+stewart+jay+warren+santa+rosa&hl=en&ct=clnk&cd=2&gl=us

*Google is neither affiliated with the authors of this page nor responsible for its content*

These search terms have been highlighted: **stewart jay warren santa rosa**

Filed 6/28/07  P v Warren CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

**THE PEOPLE,**

   **Plaintiff and Respondent,**   A112533

v.   (Sonoma County

        Super. Ct. No. SCR-462245)

**STEWART JAY WARREN,**

   **Defendant and Appellant.**

_____/

   **Stewart Jay Warren** appeals from a judgment entered after a jury convicted him of possessing methamphetamine for purposes of sale (Health & Saf. Code, § 11378) and being a felon in possession of ammunition (Pen. Code, § 12316, subd. (b)(1)). He contends his conviction must be reversed because (1) the trial court erred when it denied his motion to suppress, and (2) he received ineffective assistance of counsel. We will reject these arguments and affirm.

I. FACTUAL AND PROCEDURAL BACKGROUND

   On November 27, 2002, members of the **Santa Rosa** Police Department went to appellant's home located at 2520 Spring Creek Drive in order to execute a search warrant. When the officers arrived, they saw a woman get out of a car and walk toward appellant's front door. The officers ordered the woman to stop, but she hurried inside and bolted the door. The officers forced their way in and found appellant, the woman, and two other persons.

   The officers detained appellant and the others outside. Appellant told Officer Richard Kohut, "This is my

house. Everything in it is mine. My friends have nothing to do with it."

Officer John Barr searched the house. In the top drawer of a desk, he found a small pouch. Inside the pouch, Barr found approximately one ounce of methamphetamine and more than 60 ziplock plastic baggies.

Another officer searched the garage and found several padlocked lockers. On threat that locks would be cut off the lockers, appellant directed officers to a key to the lockers on his key chain. An officer opened the lockers and found nearly 300 rounds of ammunition.

Based on these facts, an information was filed charging appellant with the offenses we have set forth above. Appellant filed a motion to suppress. He argued the search warrant was invalid because the supporting affidavit was inadequate. The trial court disagreed and denied the motion.

The case was then tried to a jury where the prosecutor presented the evidence we have set forth above. Appellant testified in his own defense. He said he had no idea that there were drugs in his house on the day of the search. Appellant said he found out later that the drugs had been left by a friend named Christopher Murphy who had visited him that day.

Murphy also testified for the defense. He said he visited appellant on the day in question. Appellant seemed irritated by his presence and he left the room. Murphy decided to go to a nearby restaurant to get a hamburger. He had drugs as well as a gram scale in his possession that he did not want to take with him, so he left the drugs in appellant's home. While Murphy was out, the police executed the search warrant.

The jurors rejected this explanation and convicted appellant on both charges. After the court sentenced appellant to probation, he filed the present appeal.

II. DISCUSSION

A. Motion to Suppress

Appellant's home was searched pursuant to a warrant that was obtained by Officer Richard Kohut of the **Santa Rosa** Police Department. Kohut's affidavit said he was seeking a warrant based on the following events:

On November 11, 2002, shortly before midnight, Kohut was on patrol when he saw Christopher Murphy walking on the street. Murphy told Kohut he had just left appellant's home. Murphy consented to a search. Kohut described what occurred next: "I removed the money and papers from [Murphy's] pants and noticed a small plastic bag. Inside the bag was a small amount of off white powder consistent with Methamphetamine. I placed Murphy under arrest . . . . Murphy was then transported to Sonoma County Jail . . . . The substance in possession by Murphy had a weight of .9 grams and tested positive for Methamphetamine."

Next, Kohut described an incident that occurred on November 13, 2002. Kohut and two other officers were conducting a surveillance of appellant's home when a truck drove up. A passenger got out, went inside appellant's house for a few minutes, and then returned. The passenger got back into the truck and it drove away. Kohut stopped the truck and learned the passenger had two outstanding warrants. Kohut and the other officers then searched the driver and the passenger. The driver had a "small plastic tube in [his] right front pants pocket . . . . Inside the tube was an off white powder consistent with Methamphetamine." The passenger had a "small plastic bag in the pocket [of his wallet]. The bag contained [an] off white powder substance which was consistent with Methamphetamine." Kohut also found a plastic container in the car. When he opened the container he "noticed several plastic bags inside." He removed the bags and "observed each of the . . . bags to contain an off white powder/rock substance. The substance was consistent with

Methamphetamine. It appeared the combined weight of the substance from the . . . bags was approx 1 oz."

Next, Kohut said that during the month of October he had spoken to a confidential citizen informant (CCI) who suspected that methamphetamine was being sold from appellant's home. "The CCI states that he/she has seen on numerous occasions, vehicles, bicyclists, and pedestrians, park then [enter] the residence at 2520 Spring Creek Dr. These individuals then immediately leave the area. The CCI stated that this type of activity occurs during all hours of the day and night and has been occurring for the past several months." The CCI's observations had been confirmed by others who lived nearby: "The **Santa Rosa** Police Department has received numerous complaints from citizens who live in the area of 2520 Spring Creek Dr. These complaints have included, but have not been limited to, narcotics use, narcotics sales and suspicious persons related to the residence at 2520 Spring Creek Dr. These complaints have resulted in numerous calls for service to deal with the above-described issues."

Finally, Kohut relayed a conversation he had on November 19, 2002 with Deputy Murphy of the Sonoma County Sheriff's Department. "Deputy Murphy informed me he had obtained information that a wanted subject was staying at 2520 Spring Creek Dr. The subject was wanted for a variety of narcotics violations and had a warrant for $100,000.00. During Deputy Murphy's investigation on 11/12/02, he and other law enforcement officers entered the residence at 2520 Spring Creek Dr., and they were assisted with a narcotic detection K-9. During the search the K-9 did not alert on any narcotics. As a result, several subjects were arrested [based on] outstanding warrants and it was determined the owner of the property was **Stewart Jay Warren** . . . ."

Based on the events Kohut described, the magistrate issued a warrant to search appellant's home.

Prior to trial, appellant filed a motion to suppress arguing the search warrant lacked probable cause. The court disagreed explaining its decision as follows: "Based on the totality of these circumstances it does appear to me that these incidents, as they relate to each other and relate to the defendant, do supply sufficient probable cause for the issuance of a warrant. If there were not probable cause here, the Court would also find that there was a good-faith belief in the warrant's efficacy."

Appellant now contends probable cause was lacking and that the trial court erred when it denied his motion to suppress.

"Probable cause exists when the information on which the warrant is based is such that a reasonable person would believe that what is being sought will be found in the location to be searched. [Citation.] The totality of the circumstances set out in the affidavit should be considered and must convince the magistrate that there is a fair probability that the evidence sought will be located at the scene of the search. [Citation.] On appeal, we accord the magistrate's determination great deference, inquiring only whether there was a substantial basis to conclude that the warrant would uncover evidence of crime." (*People v. Stanley* (1999) 72 Cal.App.4th 1547, 1554.)

Here, appellant does *not* argue that the observations set forth by Officer Kohut in his affidavit were insufficient to establish probable cause. Instead he relies on the portion of the affidavit where Kohut describes the search conducted by the Sonoma County Sheriff's Department on November 12, 2002. Noting that the dog used in the search did not alert on any narcotics, appellant contends "a dog sniff which produces no alert negates probable cause to believe that drugs are present."

Appellant has not cited any case that holds a dog's failure to alert can "negate" an otherwise adequate showing of probable cause, and such a conclusion would be unwarranted. A magistrate evaluating probable cause must look at the "totality of the circumstances," and a dog's failure to alert is simply one circumstance the magistrate should consider. As another court stated when faced with a similar argument, "The dog's failure to react does not . . . destroy the 'probable cause' that would otherwise exist. It is just another element to be considered by the magistrate." (*United States v. Jodoin* (1st Cir. 1982) 672 F.2d 232, 236.) We conclude probable cause was not lacking simply because a drug sniffing dog that was on appellant's

property several days prior to the search failed to alert to the presence of drugs.

B. Whether Trial Counsel Provided Ineffective Assistance

Appellant contends his conviction must be reversed because he received ineffective assistance of counsel.

A defendant who contends he received ineffective assistance has the burden of proving that (1) trial counsel's performance was deficient in that it fell below an objective standard of reasonableness when measured by prevailing professional norms, and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. (*People v. Ledesma* (1987) 43 Cal.3d 171, 215-218.) An appellant who alleges ineffective assistance on direct appeal bears an especially heavy burden of proof: "'[I]f the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged[,] . . . unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation,' the claim on appeal must be rejected. [Citations.]" (*People v. Wilson* (1992) 3 Cal.4th 926, 936, quoting *People v. Pope* (1979) 23 Cal.3d 412, 426; see also *People v. Mendoza Tello* (1997) 15 Cal.4th 264, 267.)

Here, appellant raises several arguments and sub-arguments. We will address them separately.

1. Issues related to Christopher Murphy

a. Questioning of Officer Kohut

During cross-examination, defense counsel asked Officer Kohut whether he had any contact with Christopher Murphy during the two-month period that he was conducting a surveillance of appellant's home. Kohut said he had no such contact. Counsel then impeached Kohut on the point:

"Q. [Defense counsel] You prepared an affidavit for search warrant in this matter, did you not?

"A. [Officer Kohut] Yes.

"Q. Did you not indicate on that affidavit that you saw a gentleman walking from the general direction of 2520 Spring Creek Drive and that you stopped him, identified him as Christopher Murphy, that he was acting nervous, that you requested to be able to search him, that you did search him and found drugs on him and that you arrested him?

"A. If it's in my affidavit, then I did."

Appellant now contends trial counsel was ineffective because he "did not offer the affidavit as evidence or to refresh Kohut's recollection . . . ."

Counsel's failure to offer the affidavit can easily be explained. The affidavit contained other evidence that suggested appellant was dealing drugs. Counsel may have concluded that whatever benefit he could achieve by offering the affidavit was outweighed by the negative information that also would come in. As for the argument that counsel should have "refreshed" Kohut's recollection, that is precisely what defense counsel did. He described Kohut's encounter with Murphy as it was set forth in the affidavit, and got Kohut to admit that those events did occur. We conclude counsel was not ineffective on these grounds.

b. Fifth Amendment

During cross-examination, the prosecutor asked Murphy whether he ever contacted the police or the district attorney to tell them the drugs that were found in appellant's home were his. Murphy replied that it was not "[his] job" to relay that information. Appellant now contends trial counsel was ineffective because he failed to object on Fifth Amendment grounds to the prosecutor's attempt to use Murphy's silence against

Murphy.

It is improper for a prosecutor to use a *defendant's* post *Miranda* silence as evidence of guilt. (See, e.g., *People v. Cockrell* (1965) 63 Cal.2d 659, 670.) But appellant has not cited any authority for the proposition that where a *witness* called by the defense admits an illegal possession of drugs, it is improper for the prosecutor to attack the witness's credibility with a comment on the *witness's* failure to accept responsibility for the charged crime. Appellant's trial counsel represented appellant, not witness Murphy. Appellant has not carried his burden of showing that counsel was ineffective on this ground.

c. Testimony Regarding Murphy's Possible Punishment

Appellant contends trial counsel was ineffective because he failed to get Murphy to admit that he might face a third-strike 25 year to life sentence if he admitted possessing the drugs that were found at appellant's home. According to appellant, such an admission would have made Murphy's testimony about leaving the drugs in appellant's home more believable. However, counsel might not have wanted to highlight the fact that Murphy was a potential third striker in an effort to maintain his credibility. Alternately, counsel may have believed that belaboring Murphy's criminal history would do more harm than good. Both explanations are plausible and both preclude a finding that counsel was ineffective.

d. Evidence and Argument Concerning Additional Punishment

During cross-examination, the prosecutor asked Murphy whether he was incarcerated:

"Q. Now you're currently serving time in prison; isn't that right?

"A. Yes, it is.

"Q. How much time are you serving?

"A. 10 years.

"Q. And that's for receiving stolen property and failing to appear in court, right?

"A. Yes, it is."

Later during cross examination, Murphy explained his motive for testifying:

"A. ... I told a mutual friend of ours to go over and to tell [appellant] that if his case went to trial, to call me as a witness and I would do the right thing.

"Q. And that's when you were serving the prison time, right?

"A. No. That was when I was in the county jail before I went to prison.

". . . .

"Q. So at that time you knew you got nine years and you said, 'I'll testify in your case,' right?"

"A. I knew I had gotten nine years and I knew that he was in trouble because of me."

During final argument, the prosecutor urged the jurors to reject Murphy's testimony, "Did Mr. Murphy have an interest or bias? He's trying to help out his good friend, 'very good friend' quote unquote. The defendant. He's in prison serving 10 years. Hey, I'll come over and help out my friend, Mr. **Warren**. He clearly had an interest or bias."

Later during final argument, the prosecutor again urged the jurors to reject Murphy's testimony because it was biased, "Again, we know his background. He's doing 10 years in prison now. Come in and help a friend out. Hopefully someone will [] buy my testimony."

Appellant now contends trial counsel was ineffective because he "inexcusably failed to object to, or offer evidence to rebut, the district attorney's false suggestion that Murphy could take the blame for the drugs without risk of additional punishment . . . ."

We reject this argument because it is based on a false premise. The prosecutor did not tell the jurors that Murphy could take the blame for the drugs without risking additional punishment. The prosecutor simply suggested that Murphy was biased.

Furthermore, even if the prosecutor's questioning and argument can be interpreted as suggesting that Murphy would not face any additional punishment, defense counsel was not required to present contrary evidence. As we have noted, defense counsel may have wanted to downplay Murphy's criminal history and any potential additional punishment he might face as a way of maintaining his credibility. We conclude counsel was not ineffective on this ground.

 e. Evidence Concerning when Murphy was Identified as a Potential Witness

Appellant contends trial counsel was ineffective because he failed to present evidence "to establish that more than a year prior to trial Murphy was identified to the prosecution as a witness who would accept responsibility for the drugs . . . ." That evidence was required, appellant contends, because the prosecutor "made it appear to the jury as if the date of trial was the first time the prosecution and police had ever heard of Murphy—and as a result Murphy should be disbelieved." However, appellant has not cited any portion of the record where the prosecutor made it "appear" that the first time he heard of Murphy was at the time of trial.[1] The prosecutor simply questioned Murphy about his motive for testifying and argued he was biased. Counsel was not ineffective for failing to counter a suggestion that was not made.

 f. Details Concerning Murphy's Rap Sheet.

Appellant contends trial counsel was ineffective because he failed to "[elicit] testimony regarding Murphy's long history of drug arrests and convictions . . . ." According to appellant, competent counsel "would have detailed for the jury, one by one, each and every drug-related arrest and, more importantly, conviction suffered by Murphy in his lifetime . . . ." However, the jurors learned that Murphy was a multiple felon, a heavy drug user, and that he had been arrested in possession of drugs after leaving appellant's home. Counsel may have concluded that belaboring every arrest and every conviction Murphy had suffered would destroy his already diminished credibility. We cannot conclude counsel was ineffective on this ground.

 2. Failure to Sanitize Prior Conviction

The information alleged appellant had suffered a prior felony conviction for possessing marijuana for purposes of sale. Counsel now contends trial counsel was ineffective because he did not stipulate to the prior conviction and move to sanitize it. As a result "the jury learned that [appellant] was . . . convicted of possession of marijuana for sale – evidence which they undoubtedly considered highly relevant to the question of whether [appellant] was responsible for the drugs."

However, counsel may have believed that letting the jurors know that appellant had been convicted of possessing marijuana for sale, a relatively minor offense, would prevent them from speculating that appellant had been convicted of an even more serious offense. Furthermore, appellant admitted the prior offense during his testimony at trial.

He said the conviction was more than 20 years old and that it resulted in no prison time. Reasonable counsel could conclude that admitting a distant and relatively minor drug offense was more beneficial than allowing

the jurors to speculate that appellant's prior offense was more recent and more serious.

### 3. Failure to Present Evidence of the Dog Search

Appellant contends trial counsel was ineffective because he failed to present evidence about the dog search that had been conducted at his home two weeks prior to his arrest. "Because no . . . evidence was discovered during the dog search, [appellant] could more persuasively argue that he was not dealing drugs and, therefore, the drugs found in the desk drawer belonged to Murphy."

While admitting evidence of the dog search might have aided appellant's attempts to blame Murphy, it is likely that evidence would have caused the jurors to speculate why the authorities had searched his house with a drug sniffing dog. Reasonable counsel could conclude that whatever benefit appellant would achieve by admitting evidence concerning the prior dog search would be outweighed by the negative inferences that would flow from that evidence.

### 4. Failure to Advise Appellant About Possible Defense

Appellant contends trial counsel was ineffective because he erroneously advised him that he was permitted to possess ammunition under the precise facts of this case. However, appellant has not pointed to any evidence in the record that indicates counsel advised him incorrectly, and appellant concedes the issue "is perhaps more appropriately tackled in a habeas petition . . . ." A defendant must establish ineffective assistance by facts not speculation. (*People v. Mattson* (1990) 50 Cal.3d 826, 877.) Appellant has not satisfied that burden.

### 5. General Incompetence

Appellant's final argument is based on what he describes as "general incompetence." However, while appellant states trial counsel was incompetent "generally," he raises only one specific complaint. He contends trial counsel was ineffective because he "repeatedly harped on the number of bedrooms in the house insisting there were three bedrooms, not two as testified to by the officers."

Even if we were to assume, for the sake of argument, that trial counsel should not have emphasized that point, we see no prejudice. Appellant concedes the number of bedrooms in the house was "wholly irrelevant." It is not reasonably probable appellant would have achieved a more favorable result if counsel had refrained from emphasizing a "wholly irrelevant" fact. (*People v Ledesma, supra,* 43 Cal.3d at pp. 215-218.)

### III. DISPOSITION

The judgment is affirmed.

Jones, P.J.

We concur:

Simons, J.

_____

Gemello, J.

## DECLARATION OF SERVICE BY MAIL

I am a citizen of the United States, over the age of 18 years and not a party to the within action. My business address is 645 First Street West, Sonoma, California 95476.

I served true and correct copies of the REQUEST TO TAKE JUDICIAL NOTICE, by placing said copies through the United States Mail at Sonoma, California on the date shown below, and in a sealed envelope(s) with first-class postage prepaid, addressed to the person(s) below.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed at Sonoma, California on September 6, 2007.

/ S /
_____
Deena M. York

David N. Chandler, Sr. Esq.
David N. Chandler, P.C.
1747 Fourth St.
Santa Rosa, CA 95404

Office of the U.S. Trustee
U.S. Department of Justice
250 Montgomery Street, Suite 1000
San Francisco, CA 94104-3401
Attn: James Shepard, Esq.